UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) ) ) |
| Plaintiff/Respondent, | ) ) No. 2:16-CR-36-DLB-HAI |
| v. | ) ) RECOMMENDED DISPOSITION |
| MARK M. BROWN, | ) ) |
| Defendant/Movant. | ) ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Federal prisoner Mark M. Brown has filed a motion to vacate his sentence under 28 U.S.C. § 2255, alleging ineffective assistance of counsel ("IAC"). D.E. 102. He states two grounds for relief. The first is that "[c]ounsel provided ineffective assistance when he failed to properly explain the proposed plea offer." *Id*. at 4. The second is that "[c]ounsel provided ineffective assistance when he failed to object to the inadequate factual basis for the guilty plea to count two," which was for possessing a firearm in furtherance of a drug crime. *Id*. at 5. The government argues the plea offer described by Brown never existed and that an adequate factual basis for Count Two was established at Brown's rearraignment. D.E. 113. Brown did not file a reply.

Under 28 U.S.C. § 2255, a federal prisoner may seek habeas relief because a sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such a sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255. To prevail on a § 2255 motion alleging constitutional error, a defendant must establish that the error had a "substantial and injurious effect or influence on the proceedings." *Watson v. United States*,

165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). A § 2255 movant bears the burden of proving his or her allegations by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam).

Brown is proceeding *pro se*, without the assistance of an attorney, so the Court construes his motion liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Castro v. United States*, 540 U.S. 375, 381-83 (2003); *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985).

## I. Background

On August 22, 2017, Brown, on the second day of his jury trial, entered a conditional plea of guilty to (1) possessing with intent to distribute 50 grams or more of crystal meth and (2) possessing a firearm in furtherance of the drug-trafficking crime. D.E. 76. The government moved to dismiss a third count, and Brown reserved his right to appeal the denial of his pre-trial motion to suppress evidence. *Id*. There was no written plea agreement. *Id*. On November 21, 2017, Brown was sentenced to a total imprisonment term of 300 months. D.E. 90. Brown appealed, and, on September 7, 2018, the Sixth Circuit affirmed the denial of his motion to suppress. *United States v. Brown*, 748 F. App'x 678, 679 (6th Cir. 2018). Brown petitioned for a writ of certiorari, but the Supreme Court denied it on May 20, 2019. D.E. 101.

## III. Legal Standards for Ineffective Assistance of Counsel

During plea negotiations defendants are entitled to the effective assistance of competent counsel. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). To successfully assert an ineffective-assistance-of-counsel claim, a defendant must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). To prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by

the Sixth Amendment." *Strickland*, 466 U.S. at 687. A defendant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 688.

However, a reviewing court may not second-guess trial counsel's strategic decisions. *Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002). Thus, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotations omitted). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

To prove prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. When evaluating prejudice, courts generally must consider the "totality of the evidence." *Id.* at 695. Courts may approach this analysis in any order, and an insufficient showing on either prong ends the inquiry. *Id.* at 697.

To show prejudice in the guilty-plea context, a movant generally "'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and instead would have insisted on going to trial.'" *Hodges v. Colson*, 727 F.3d 517, 534 (6th Cir.

3

2013) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)), *cert. denied sub nom. Hodges v. Carpenter*, 135 S. Ct. 1545 (2015), *reh'g denied*, 135 S. Ct. 2345 (2015). In some cases, such as this one, where a defendant alleges ineffective assistance of counsel caused him to miss out on a more favorable plea option, the prejudice question requires looking at whether the defendant would have reasonably taken the earlier available option. *See Missouri v. Frye*, 566 U.S. 134, 148 (2012).

Brown indicates in his memorandum that he would not have pleaded guilty to the firearm-in-furtherance offense if he knew he would have to admit the firearm was intended to further the drug offense. D.E. 102-2 at 11-12. Instead, he would have proceeding with the trial on the § 924(c) charge because he "did not intend for the firearm to protect or otherwise further his drug activity." *Id*. at 12.

## IV. Ground One – Plea Offer

Brown's first claim, concerning an alleged plea offer, is contradicted by other evidence. It appears to be based on an erroneous memory of an offer that never was. Brown states in his memorandum:

> Prior to the suppression hearing, in approximately October of 2016, Attorney Raymond S. Bogucki visited Movant at the Campbell County Detention Center. During that visit Mr. Bogucki presented a plea offer from the government. Mr. Bogucki informed that the plea would allow for a twelve year term of imprisonment. Despite presenting this plea offer, during the visit Mr. Bogucki did not compare the sentencing exposure associated with taking the plea deal compared to the exposure associated with proceeding to trial. In fact, Mr. Bogucki did not have full discovery at the time so such could not be discussed at length. The suppression issue was the major topic discussed at this meeting. Neither did Mr. Bogucki discuss the strength of Movant's case or the probability of an acquittal at trial. In the end Movant chose not to accept the plea offer.

D.E. 102-2 at 2. Similarly, Brown's affidavit states, "during [an October 2016] meeting Mr. Bogucki informed me that the prosecution offered a plea deal that would allow for a twelve year

4

term of imprisonment." D.E. 102-1 at 1. Brown insists, "had Mr. Bogucki explained to me that acceptance of the plea would have shielded me from a twenty-five year mandatory minimum sentence, I would have taken the plea." *Id*.

Mr. Bogucki remembers things differently. He states in his affidavit:

[E]arly on, in fact before the first court appearance, I made an appointment with the Honorable Tony Bracke, Assistant U.S. attorney to see if the case could be resolved through a plea agreement before presenting anything to Mr. Brown. The talks with Mr. [Bracke] were not fruitful and no plea offer was made. Myself and co-counsel, the Honorable Tim Schneider, during discussion with Mr. Brown did play the "what if" game. That is to say "what if we could get Mr. Bracke to offer 10 years on an amended charge would you find that acceptable?" Mr. Brown continually said that . . . a 10-year sentence or even a five-year sentence would be life in prison for him because he didn't feel he would live very long due to his poor health. . . . I do not remember having had any plea offers either in writing or made orally by the U.S. Attorneys office.

D.E. 113-2.

Mr. Bracke's memory jibes with Mr. Bogucki's:

At no time, during my involvement in the case, did I extend a plea offer to Mr. Brown's attorneys, Raymond Bogucki or Timothy Schneider. Mr. Brown was facing a twenty-year mandatory minimum sentence on a drug charge and a consecutive five-year sentence on a gun charge. Mr. Brown had a significant criminal history, including Murder, Felon in Possession of a Firearm, Aggravated Trafficking, and Escape. Brown did not provide any assistance which would have caused me to consider a plea offer below his mandatory minimum terms. His attorney asked about this possibility and I explained our office policy regarding cooperation. This included a specific statement that I could not commit to offer a sentence below the statutory minimum under any circumstances. At no time did I, formally or informally, offer a sentence below the mandatory minimum term during my involvement with the case.

D.E. 113-1.

On March 30, 2017, AUSA Laura Voorhees took over the prosecution from Mr. Bracke. D.E. 44. She also submitted the government's response in this case. She states that another attorney for Brown, Timothy Schneider, asked her about a possible plea offer. D.E. 113 at 6. Ms. Voorhees attaches a chain of emails in which she informs Mr. Schneider that no plea offer

had ever been extended to Brown. *Id*. (citing D.E. 113-3). Under existing policies, "there was nothing the government could offer him." *Id*. Ms. Voorhees argues that her emails, along with the affidavits from Mr. Bogucki and Mr. Bracke, "corroborate[] the fact that no plea offer was made to Brown prior to the second day of trial." *Id*. at 7.

Thus, the prosecution and the defense agree that the alleged plea offer underlying Ground One never existed. At most, Brown and his counsel discussed possible plea-offer scenarios. Brown may simply be mis-remembering this conversation as if it was a discussion of an actual plea offer.

Mr. Bogucki could not have been ineffective for failing to properly counsel Brown concerning a plea offer that did not exist. Ground One should be denied.

### V. Ground Two – Firearm in Furtherance

Brown argues that, at his rearraignment, counsel improperly "failed to object to the inadequate factual basis" underlying Count Two. D.E. 102 at 5. Count Two alleged a violation of 18 U.S.C. § 924(c), which makes it a crime to possess a firearm "in furtherance of" any drug trafficking crime. This crime requires proof that "a defendant used the firearm with greater participation in the commission of the crime [than merely 'during or in relation to'] or that the firearm's presence in the vicinity of the crime was something more than mere chance or coincidence." *United States v. Combs*, 369 F.3d 925, 933 (6th Cir. 2004). "[T]he government must show that the firearm was possessed to advance or promote the commission of the underlying drug trafficking offense." *Id*.

Brown argues that his plea colloquy did not establish "the knowing state of mind necessary for a § 924(c) conviction." D.E. 102-2 at 7. He insists he would not have pleaded guilty to Count Two if it meant admitting he "intend[ed] for the firearm to somehow advance or

6

stimulate his drug trafficking activity." *Id*. Brown argues he "had no specific intention or purpose in regard to the firearm in question." *Id*. He states in his affidavit, "If I was asked during the colloquy whether the firearms were brought along to protect or further the drug activity, I would have maintained that they were not." D.E. 102-1 at 1. He says he "did not have any particular intention for the firearms . . . to protect or otherwise further" his drug activities. *Id*.

Assessing deficient performance requires the Court to presume at the outset that counsel rendered effective assistance. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). In light of this presumption, Brown must show by a preponderance of the evidence that counsel acted so unreasonably it amounted to no representation at all. *Id*. at 687. In other words, was Brown's *mens rea* so clearly not established that a reasonable lawyer would have objected?

Brown cannot establish deficient performance because the record shows he understood the elements of Count Two and admitted knowing that he kept his guns, at least in part, to protect his drugs. The record contains a transcript of Brown's rearraignment. D.E. 86. Judge Bunning asked Brown about the three handguns that were found along with the drugs in his hotel room. *Id*. at 32. He asked, "Did you possess those in furtherance of the drug trafficking crime in Count 1?" Brown replied, "yes sir." *Id*. Judge Bunning took further steps to ensure Brown understood the charge. He explained, "If you have a gun, and the reason you have it is to protect the large amount of dope that you have in case something happens, that's in furtherance of. Do you understand how that works?" *Id*. at 33. Brown answered, "Yes, sir." *Id*. A sufficient factual basis for Brown's knowing possession-in-furtherance was thereby established.

But Judge Bunning pushed further. He asked, "If someone came to rob you and tried to take your dope, what would you have done?" D.E. 86 at 33. Brown answered, "Don't know."

7

Judge Bunning asked, "Well, do you think the guns would have come in handy in a situation like that?" *Id.* Defense counsel then interrupted, stating that while Brown may have possessed the pistols "for a number of reasons," he was "prepared to acknowledge it was also possessed in furtherance of the conspiracy." *Id.*

Brown's counsel at his rearraignment, Tim Schneider, had good reason to make this statement. According to Mr. Schneider's affidavit,

> 4. During the process of advising and representing the Defendant during the trial and the plea process, we extensively discussed the elements of the crimes herein. We discussed the elements of 18 U.S.C § 924(c) in general; however, we specifically discussed what it meant to knowingly possess a firearm in furtherance of the crime of drug trafficking;
>
> 5. We discussed that the firearms, which were loaded, being strategically located so close to the drugs and quickly available for use, constituted strong proof for the government;
>
> 6. The Defendant did not make any comment or express any reservation, which would have indicated any confusion or uncertainty as to any elements of the crimes. In fact, the Defendant actually demonstrated an intellect and knowledge that was very impressive; he did quite a bit of independent research and asked probing questions.
>
> 7. After discussions, and being fully apprised of the Government's proof, the Defendant readily stated his intention to plead guilty to both counts.

D.E. 113-5.

Brown argues that his "don't know" in response to the question of what he would have done if someone tried to steal his dope shows "there was no intended purpose to the firearm." D.E. 102-2 at 9. Brown acknowledges that, after he said, "don't know," "the court went through great pains to further explain the 'in furtherance of' concept." *Id.* at 10. But, he argues, "the factual basis is still void of any statement . . . that confirms [Brown's] intention of having the firearm at the time of the offense was to somehow further the drug trafficking offense." *Id.*

8

This argument ignores what preceded that question. Judge Bunning explained, "If you have a gun, and the reason you have it is to protect the large amount of dope that you have in case something happens, that's in furtherance of. Do you understand how that works?" D.E. 86 at 33. Brown answered, "Yes, sir." *Id*. Brown's subsequent statement that he is not sure what he would have done in the event of an actual robbery does not negate his prior statement that he understood his plea meant he knowingly had the guns to protect the drugs "in case something happens." *Id*.

Judge Bunning proceeded then to explain the concept of dual purpose:

If I possess a gun to shoot varmints outside my house and I've got dope in my house and I'm growing marijuana in my basement and I'm also going to use it if someone breaks in to make sure they get the heck out of my house so they don't take my dope, the fact that I also shoot varmints outside, it can have a dual purpose. Do you understand that?

D.E. 86 at 33-34. Brown answered, "Yes, sir." Judge Bunning reiterated, "it doesn't have to be exclusively in furtherance of. Do you understand that?" Brown again answered, "Yes, sir." *Id*. at 34. Again, the colloquy shows Brown understood he was admitting knowing possession of the firearms in furtherance of the drug conspiracy.

Brown argues his case resembles *United States v. Monzon*, 429 F.3d 1268, 1269-71 (9th Cir. 2005). D.E. 102-2 at 9. But that case is quite different. There, the magistrate judge asked the defendant, "Did you in fact possess that firearm in part to protect those drugs?" The defendant answered, "No. That's not it. I just had it because somebody sold it to me cheap." *Monzon*, 429 F.3d at 1270. Monzon's plea agreement also contained no statement that he possessed the gun, at least in part, to protect the drugs. *Id*. at 1270-71. In contrast to Monzon, Brown readily admitted at his rearraignment that he understood both the dual-purpose concept

9

and that he had the guns "to protect the large amount of dope . . . in case something happens." D.E. 86 at 33.

The plea colloquy on its face establishes a sufficient factual basis for the § 924(c) conviction. Mr. Schneider's affidavit adds further weight to this conclusion. Brown's argument that he did not understand Count Two or that he had no "particular intention for the firearms" is not credible in light of the record. Brown's knowing possession-in-furtherance was established at his rearraignment. Counsel had no valid basis to object. Brown has not shown deficient performance of counsel.[1]

## VI. Conclusion

Based on the foregoing, the undersigned **RECOMMENDS** that Brown's 28 U.S.C. § 2255 motion (D.E. 102) be **DENIED.**

This case does not warrant an evidentiary hearing. An evidentiary hearing is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b); *See Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). "It follows that if the record refutes the applicant's factual

---

[1] To the extent Brown's motion might be construed as presenting a challenge to the sufficiency of the evidence on Count Two, such a claim should also be denied. Entry of a voluntary and intelligent plea of guilty precludes a post-judgment challenge to the sufficiency of the evidence. "[A] counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it quite validly removes the issue of factual guilt from the case." *Menna v. New York*, 423 U.S. 61, 62 n.2 (1975). Any "attack on the sufficiency of the evidence that might have been produced at trial [is] clearly waived by [a] defendant's guilty plea." *United States v. Manni*, 810 F.2d 80, 84 (6th Cir. 1987). "[A] guilty plea admits all averments of fact in the indictment, cures all non-jurisdictional defects, waives all defenses, and relieves the prosecution from the duty of proving any facts." *United States v. Patton*, 173 F.3d 857 (6th Cir. 1999) (table) (citing *Tollett v. Henderson*, 411 U.S. 258, 260-67 (1973)). Even absent a plea of guilty, a challenge to the sufficiency of the evidence is generally "not cognizable under § 2255." *Buchanan v. United States*, 191 F.3d 451 (6th Cir. 1999). The Sixth Circuit has "repeatedly held that the sufficiency of the evidence to support a conviction may not be collaterally reviewed on a Section 2255 proceeding." *United States v. Osborn*, 415 F.2d 1021, 1024 (6th Cir. 1969) (en banc).

allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id*. In this case, the record, which includes the relevant transcripts and multiple affidavits, demonstrates Brown's key factual contentions are not credible. No pre-trial plea offer was ever made. And the plea colloquy established an adequate factual basis for Count Two. The record therefore "conclusively show[s]" he is not entitled to relief. *Arredondo*, 178 F.3d at 782.

The undersigned further **RECOMMENDS** that no Certificate of Appealability issue. Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *See also* Rule 11 of the Rules Governing Section 2255 proceedings. This standard is met if the defendant can show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). The Court has considered the issuance of a Certificate of Appealability as to both of Brown's claims. No reasonable jurist would find the assessments on the merits above to be wrong or debatable; thus, no Certificate of Appealability should issue.

Any objection to or argument against denial of the § 2255 motion must be asserted **before the District Judge** in response to this Recommended Disposition. The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings, Rule 8(b). Within **fourteen days** after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or

recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

This the 8th day of January, 2020.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge